## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Mark Edwin Albertson,                                    Civ. No.: 07-03855 (JNE/JJK)

                    Plaintiff,

v.                                                              **REPORT AND**
                                                               **RECOMMENDATION**

Lynn Dingle, Warden

                    Respondent.

---

Mark Edwin Albertson, Inmate No. 215253, Minnesota Correctional Facility, 970
Pickett Street, Bayport, Minnesota 55003, Petitioner, *pro se*.

Michelle Winkis, Chief Assistant Clay County Attorney, 807 11th Street North,
P.O. Box 280, Moorhead, Minnesota 56561, for Respondent.

---

JEFFREY J. KEYES, United States Magistrate Judge

        This matter is before the undersigned United States Magistrate Judge on

Petitioner's Application for Habeas Corpus Relief under 28 U.S.C. § 2254 (Doc.

No. 1), Respondent's Motion to Dismiss (Doc. No. 5), and Petitioner's Objection

to Respondent's Memorandum to Dismiss Petition for Writ of Habeas Corpus

(Doc. No. 13).  The matter has been referred for a Report and Recommendation

pursuant to 28 U.S.C. § 636(b)(1)(B) and District of Minnesota Local Rule 72.1.

For the reasons discussed below, the court recommends that Respondent's

Motion to Dismiss be granted and Petitioner's Application for Habeas Corpus

Relief be denied.

## I.  PROCEDURAL AND FACTUAL BACKGROUND

In July 2004, Petitioner was tried and convicted by a jury in Clay County,

Minnesota, on three counts of first-degree criminal sexual conduct, in violation of

Minn. Stat. § 609.342, subds. 1(b), (g), and 1(h)(iii) (2002).  The charges were

based on Petitioner's alleged two-year sexual relationship with his niece, who

was thirteen years old at the time the relationship began and was twenty years

younger than Petitioner.  The Minnesota Court of Appeals summarized the trial

testimony as follows:

> The jury heard testimony that over the course of two
> years appellant had intercourse with T.A. [his niece]
> approximately 100–150 times, attempted to have anal
> sex with T.A. once, provided T.A. with "crank" between
> 30–40 times, and induced T.A. to perform fellatio on
> appellant approximately 40–50 times.  Several of T.A.'s
> friends testified that T.A. had told them about the sexual
> abuse.  Appellant testified that, while he spent time with
> T.A. because he felt sorry for her, he never had sexual
> relations with her.  T.A.'s mother and grandmother
> testified that T.A. was a "liar" and that appellant had
> done nothing wrong.  The jury found appellant guilty.

*State v. Albertson*, No. A04-2277, 2006 WL 466454, at *1 (Minn. Ct. App. Feb.

28, 2006).

The state moved to present to the jury by way of special interrogatories the

question of aggravating factors supporting an upward durational sentencing

departure in the event of conviction.  Following the guilty verdicts, the district

court instructed the jury to consider the following aggravating factors relevant to

sentencing: first, that Petitioner induced his thirteen-year-old niece to engage in

sexual penetration by giving her alcohol, tobacco, and gifts to gain her trust and favor; and second, that Petitioner induced her to engage in sexual penetration by giving her marijuana and methamphetamine to gain her trust and favor.  The jury found unanimously that both aggravating factors existed beyond a reasonable doubt.

The district court sentenced Petitioner to an executed term of 288 months, a double upward durational departure from the presumptive sentence of 144 months.  On February 28, 2006, the Minnesota Court of Appeals affirmed the conviction.  On May 16, 2006, the Minnesota Supreme Court granted review of Petitioner's sentencing issue and stayed all proceedings pending the decision of *State v. Chauvin*, 723 N.W.2d 20 (Minn. 2006).  On December 12, 2006, the Minnesota Supreme Court, based on the decision in *Chauvin*, vacated its Order for Review, and denied review.

On August 30, 2007, Petitioner filed his federal habeas petition.  Ground One of the petition asserts that Petitioner was deprived of a fair trial due to prosecutorial misconduct.  Specifically, Petitioner alleges the following misconduct by the prosecution: first, the prosecutor used "were they lying" questions during cross examination of Petitioner at trial; second, the prosecutor improperly elicited evidence of Petitioner's post-arrest silence; and third, the prosecutor improperly commented on the Petitioner's decision to exercise his right to be present during trial.  (Doc. No. 13 at 2.)

Ground Two of the Petition alleges that petitioner received an illegal

double departure from the presumptive sentence of 144 months (288 months),

and that that constituted an unreasonable application of existing federal law as

established by the United States Supreme Court.  (Doc. No. 13 at 3.)  In support

of this argument, Petitioner contends that his sentence was imposed prior to

Minnesota legislation that allows juries to find aggravating factors, and was done

by the use of special interrogatories "attached to the verdict forms in an attempt

to apply *Blakely* in Minnesota."  (Doc. No. 13 at 3.)

Ground Three of the Petition alleges that the district court violated

Petitioner's First Amendment right to free exercise of religion because the district

court forced Petitioner to hide his Bible and indicated that in order to keep it in

the courtroom he must keep it out of sight "even though there is no record of the

Bible creating a disturbance of any kind in the courtroom."  (Doc. No. 1 at 6.)

## II.  DISCUSSION

### A.  Standard of Review

"[A] district court shall entertain an application for a writ of habeas corpus

in behalf of a person in custody pursuant to the judgment of a state court only on

the ground that he is in custody in violation of the Constitution or laws or treaties

of the United States."  28 U.S.C. § 2254(a).  "In conducting habeas review, a

federal court is limited to deciding whether a conviction violated the Constitution,

laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68

(1991).  As a result, before the writ may issue, a petitioner must establish that the

State's exercise of custody over his person is an affront to the Constitution, a

federal law, or a treaty.  *Id.*; *see also Lupien v. Clarke*, 403 F.3d 615, 619 (8th

Cir. 2005); *Newton v. Kemna*, 354 F.3d 776, 782 (8th Cir. 2004), *cert. denied*,

543 U.S. 979 (2004); *Robinson v. Leapley*, 26 F.3d 826, 829 (8th Cir. 1994).

In 1996, Congress restricted the scope of a federal court's review of

habeas petitions where the underlying claims were adjudicated in state court.

*See* Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L.

No. 104-132, 110 Stat. 1214 (1996); *see also Lockyer v. Andrade*, 538 U.S. 63,

70 (2003) ("[The] AEDPA circumscribes a federal habeas court's review of a

state court decision.").  A federal court's authority to vitiate state court decisions,

by the granting of a writ of habeas corpus, is now limited to the narrow class of

claims which have been fully exhausted in the state courts, and which involve an

adjudication that either:

> (1)  resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2)  resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has determined that the "contrary to" and

"unreasonable application" clauses of § 2254(d)(1) present two separate grounds

on which a federal court may grant habeas relief to claims adjudicated in the

state courts.  *See Williams v. Taylor*, 529 U.S. 362 (2000).  The Court has

explained that:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decide[d] a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case.

*Id.* at 412-13.

The Court further has explained that a consideration of a state court's decision under the "unreasonable application" clause requires a federal court to "ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id.* at 409; *see also Underdahl v. Carlson*, 462 F.3d 796, 798 (8th Cir. 2006); *Davis v. Norris*, 423 F.3d 868, 874-75 (8th Cir. 2005); *LaFrank v. Rowley*, 340 F.3d 685, 689 (8th Cir. 2003), *cert. denied*, 541 U.S. 950 (2004).

Under this heightened standard of review, a federal court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly," but "[r]ather, that application must also be unreasonable." *Id.* at 411; *see also Davis*, 432 F.3d at 875; *Siers v. Weber*, 259 F.3d 969, 972-73 (8th Cir. 2001) (examining the impact of *Williams* on habeas proceedings), *cert. denied*, 534 U.S. 1138 (2002); *Newman v. Hopkins*, 247 F.3d 848, 850-51 (8th

Cir. 2001), *cert. denied*, 536 U.S. 915 (2002); *Copeland v. Washington*, 232 F.3d 969, 973 (8th Cir. 2000), *cert. denied*, 532 U.S. 1024 (2001).

As a consequence, *Williams* affirmed the distinction—which had previously been drawn by several circuit courts—that the "contrary to" clause was to be used in cases addressing pure questions of law and mixed questions of law and fact, whereas the "unreasonable application" clause addressed factual determinations. *See, e.g.*, *Evans v. Rogerson*, 223 F.3d 869, 872 (8th Cir. 2000) (the "in custody" determination for *Miranda* purposes is a question of law subject to the first prong of § 2254(d) when the relevant facts are undisputed). Therefore, when a petitioner argues that the state court improperly applied clearly established Supreme Court law to a particular set of facts, the federal courts may not grant a writ absent a finding that such an application was unreasonable.  "'[O]bjectively unreasonable' does not mean 'clear error,' because [t]hese two standards . . . are not the same," and "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." *LaFrank v. Rowley*, 340 F.3d at 689 (quoting *Lockyer v. Andrade*, 538 U.S. at 75) (quotations omitted).

Additionally, § 2254(e)(1) retains a presumption of correctness for all purely factual determinations rendered by a state court, which can, as a result, only be rebutted by the production of clear and convincing evidence to the contrary. *See Guinn v. Kemna*, 489 F.3d 357, 359 (8th Cir. 2007); *Lupien v. Clarke*, 403 F.3d at 618; *Green v. Norris*, 394 F.3d 1027, 1029 (8th Cir. 2005).

Despite this presumption, § 2254(d)(2) authorizes the issuance of a habeas writ if the state court judgment "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  *Kinder v. Bowersox*, 272 F.3d 532, 538 (8th Cir. 2001); *McDonald v. Bowersox*, 101 F.3d 588, 592 (8th Cir. 1996) ("[W]e presume state court findings of fact to be correct in habeas proceedings unless the petitioner establishes, the respondent admits, or the record shows otherwise."), *cert. denied*, 521 U.S. 1127 (1997).  Thus, "[f]actual findings by the state court shall be presumed to be correct, a presumption that will be rebutted only by clear and convincing evidence."  *Kinder v. Bowersox*, 272 F.3d at 538 (quotations omitted).

## B.  Exhaustion of State Remedies

Respondent contends that the subject Petition is a mixed Petition containing both exhausted and unexhausted claims because the general claim of prosecutorial misconduct, as described in the Petition, includes several specific examples of misconduct which were not specified in Petitioner's Petition For Review to the Minnesota Supreme Court.  However, in Petitioner's response to the Motion to Dismiss (Doc. No. 13), he clarifies that his claim of prosecutorial misconduct only includes the three instances of misconduct, each of which was exhausted, which we address below.  If the Petition were construed to include both exhausted and unexhausted claims, it would be a mixed petition and would be dismissed under the rule established in *Rose v. Lundy*, 455 U.S. 509 (1982), without any merits review of any of the claims.  We give Petitioner, who appears

8

*pro se*, the benefit of the doubt and interpret his Petition liberally, including his explanation that the claim of prosecutorial misconduct only includes the specific instances of misconduct that were exhausted.

## C.  Alleged Prosecutorial Misconduct

### 1.  "Were They Lying" Questions

When the Petitioner testified at trial, the prosecutor asked him a series of "were they lying" questions about the testimony of other witnesses.  This type of question, when asked of a defendant whose testimony conflicts with that of a witness, requires the defendant to state whether he believes that the witness was intentionally perpetrating a falsehood.  For example, the prosecutor asked Petitioner "were they lying" questions regarding an incident when police were called to his niece's home after Petitioner showed up and threatened the niece and her boyfriend.  The prosecutor asked Petitioner if the niece's mother and the police officer would be lying if their testimony regarding the incident differed from Petitioner's recollection.  Also, when the Petitioner testified that he had "done meth" with a friend, the prosecutor asked Petitioner if the friend was lying when he denied the drug use.

The Minnesota Court of Appeals acknowledged that "were they lying" questions are generally considered improper because this type of question unfairly gives the jury the impression that in order to acquit, it must determine that the witness whose testimony contradicts the defendant's testimony is lying. *See State v. Pilot*, 595 N.W.2d 511, 516 (Minn. 1999).  The Court of Appeals

noted that the Supreme Court of Minnesota had addressed "were they lying"

questions in *State v. Morton*, 701 N.W.2d 225 (Minn. 2005).  In *Morton*, the

defendant had denied having conversations with two motel employees who

testified that the conversations occurred.  *See id.* at 234-35.  The Supreme Court

concluded that although it was plain error for the prosecutor to ask "were they

lying" questions, the defendants' substantial rights were not affected because the

jury would have reached the same verdict without the evidence.  Applying *Morton*

to this case, the Minnesota Court of Appeals held that, as a threshold matter, the

plain error test had to be applied because the Petitioner did not object at trial to

the "were they lying" questions described above:

> Similar to the circumstances in *Morton*, appellant did not hold the
> credibility of R.D., T.A.'s mother, or the police officer in central
> focus, and he did not insinuate that these witnesses deliberately
> falsified their testimony or statements.  Thus, while it was plain error
> for the prosecutor to ask "were they lying" questions, appellant's
> substantial rights were not affected because it is highly unlikely that
> the jury would have found appellant not guilty if the prosecutor had
> not asked these questions.

*State v. Albertson*, 2006 WL 466454, at *7.

This decision of the Minnesota Court of Appeals was not "contrary to", nor

did it involve "an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States . . . ."  28 U.S.C. §

2254(d)(1).  Petitioner's claim in this instance appears to be based upon a denial

of a fair trial "in violation of Petitioner's V, VI and XIV Amendment Rights."  (Doc.

No. 13 at 2.)  The standard of review for determining whether a prosecutor's

improper question or argument demands a mistrial as a result of a constitutional

violation is the "narrow one of due process." *Darden v. Wainwright*, 477 U.S.

168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)).

The relevant inquiry is whether the prosecutor's question "so infected the trial

with unfairness as to make the resulting conviction a denial of due process." *Id.*

In habeas, the petitioner must demonstrate that there is a reasonable probability

that the question affected the outcome of the trial. *See Hamilton v. Nixon*, 809

F.2d 463 (8th Cir. 1987). The Petitioner failed to make such a showing. The

conclusion of the Minnesota Court of Appeals that "it is highly unlikely that the

jury would have found [petitioner] not guilty if the prosecutor had not asked ['were

they lying'] questions" is not unreasonable, and this habeas claim therefore

should be denied.

### 2.  Post-Arrest Silence

Petitioner alleges that he was deprived of a fair trial because the

prosecutor "improperly elicited evidence of Petitioner's post-arrest silence."

(Doc. No. 1 at 5.)  This claim arises out of the fact that at trial the prosecutor

questioned a police investigator regarding his attempt to talk to Petitioner at the

Cass County, North Dakota, jail following Petitioner's arrest for possession of

methamphetamine and marijuana.  Petitioner was arrested in North Dakota on

those drug charges before the criminal sexual conduct charges were brought

against him in Minnesota.  While he was investigating the charges that Petitioner

had engaged in sexual abuse with a minor, the investigator interviewed Petitioner

at the Cass County jail and asked Petitioner to speak with him regarding the

sexual abuse allegations.  The investigator later testified at the trial in this case

that Petitioner responded to the inquiry about sexual abuse by saying that it was

a "conspiracy" and refused to answer follow-up questions.  When the investigator

gave this testimony, the Petitioner objected, and the district court "told the jury

that the investigator indicated that [Petitioner] had exercised his constitutional

right to remain silent."  *State v. Albertson*, 2006 WL 466454, at *5.

When it reviewed this issue, the Minnesota Court of Appeals noted that the

prosecution cannot use a defendant's post-*Miranda* silence for impeachment

purposes.  *See Doyle v. Ohio*, 426 U.S. 610, 619-20 (1976).  However, in this

case, the Minnesota Court of Appeals said that Petitioner failed to show that the

investigator's testimony was evidence of post-arrest, post-*Miranda* silence

because, when the investigator interviewed the Petitioner, he was under arrest

for the unrelated drug charges.  The Minnesota Court of Appeals also found that

Petitioner had failed to show how the investigator's testimony played a

substantial part in influencing the jury to convict.  In addition, it said that the

district court's cautionary statement to the jury that Petitioner "had exercised his

constitutional right to remain silent" lessened the possibility that the information

influenced the jury.  *State v. Albertson*, 2006 WL 466454, at *5.

Petitioner has failed to meet his burden of showing that the district court

unreasonably applied clearly established federal law as determined by the

Supreme Court of the United States.  Petitioner's claim appears to be that the

12

prosecutor engaged in misconduct by eliciting the investigator's testimony and that this was a due process violation which prevented Petitioner from receiving a fair trial.  (Doc. No. 13 at 2) (arguing that "Due Process is violated if trial testimony elicits petitioner's post-arrest silence").  Accordingly, the standard of review for determining whether a prosecutor's improper question or argument demands habeas relief is the "narrow one of due process."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)).  Review of the trial transcript shows that the prosecutor's question did not so infect the trial with unfairness as to make the conviction a denial of due process.  The elicited testimony from the investigator, particularly taking into account the district court's cautionary statement to the jury that the Petitioner had exercised his constitutional right to remain silent, was not "so inflammatory and so outrageous that any reasonable true judge would have *sua sponte* declared a mistrial," and, therefore, no habeas relief is warranted for the alleged prosecutorial misconduct.  *James v. Bowersox*, 187 F.3d 867, 869 (8th Cir. 1999).

### 3.  Presence At Trial

Petitioner claims that the prosecutor also engaged in misconduct by mentioning during the cross-examination of Petitioner the fact that Petitioner had the opportunity to listen to the other witnesses' testimony before he testified in his own defense.  Petitioner argued to the Minnesota Court of Appeals that these comments impaired his right to confront witnesses against him, to testify on his

own behalf, and to be present during trial.  *See* U.S. Const. Amend. V, VI, & XIV.

The Minnesota Court of Appeals determined that Petitioner failed to object to

these comments at trial and, accordingly, applied a clear error standard of

review.  *State v. Albertson*, 2006 WL 466454, at *6.  It concluded that "[b]ecause

there is no reasonable likelihood that the absence of the prosecutor's comment

on [Petitioner's] presence during trial would have significantly affected the

verdict, the prosecutor did not commit prejudicial misconduct."  *Id.*

The absence of a timely objection to the alleged prosecutorial misconduct

is "particularly significant" in habeas review.  *James v. Bowersox*, 187 F.3d 866

(8th Cir. 1999).  "Defense counsel heard the alleged misconduct and was in a far

better position to judge its significance to the trial than an appellate court reading

a cold transcript."  *Id.* at 869.  The Minnesota courts did not unreasonably apply

federal law in its determination that the unobjected prosecutorial comments about

the Petitioner's opportunity to hear other testimony at trial was not clear error that

seriously affected the verdict.

**D.   Petitioner's First Amendment Right to Free Exercise of Religion**

Before Petitioner's trial began, the district court noticed that there was a

Bible sitting on the corner of the defense table and asked the defense counsel if

he planned to use it during the trial.  The defense counsel said that he had not

noticed that the Bible was there, that he did not plan on using it during the trial,

and that it belonged to the Defendant.  The court then said that if it would be

comforting to the Defendant, he could "put it in his lap or keep it underneath his

chair, but it's not going to be on the table."

In reviewing this issue, the Minnesota Court of Appeals decided that the district court's instruction to the Defendant to put the Bible on his lap or under his chair did not violate the constitutional right to free exercise of religion:

> Appellant also argues that the district court infringed on his religious practice and that it must be shown that the Bible's presence threatened public safety, peace, or order.  But the district court is charged with restricting disruptive conduct at trial, including the regulation of religious displays.  A compelling interest of conducting a trial in a secular, impartial, orderly manner justified the district court's order.  Because the district court inquired into the purpose of the Bible, had a compelling interest in conducting an orderly, impartial trial, and allowed appellant to hold the Bible in his lap, the district court did not err in ordering appellant to conceal his Bible.

*State v. Albertson*, 2006 WL 466454, at *2.

The Minnesota Court of Appeals decision on this issue was not contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Petitioner did not cite, in either his direct appeal or in this habeas application, any clear Supreme Court ruling requiring district courts to allow, pursuant to the free exercise clause of the First Amendment, a defendant to display religious books, symbols, or articles during trial.

Application of the Supreme Court's rulings interpreting the scope of the First Amendment's Religion Clauses shows the soundness of the Minnesota Court of Appeals' conclusion that there was no constitutional violation in this case.  It does not appear that the district court's ruling was motivated by an intent

to interfere with a religious practice, or by discrimination against Petitioner on the basis of his religion.  Rather, the district court was avoiding potentially inappropriate and disruptive conduct at the trial, and it is reasonable to assume that the court would have made the same ruling with respect to any irrelevant book, object, or symbol which could be used to convey a message to the jury, whether the message be political, social, religious, or otherwise.  The district court's ruling had the secular purpose of conducting the trial in an impartial, orderly manner.  The court's rationale, furthermore, was not a sham and did not conceal a religious objective.  *See McCreary County v. Am. Civil Liberties Union of Ky.*, 545 U.S. 844, 864 (2005).

Even if the court's ruling did impose some burden upon Petitioner's practice of his religion (assuming, *arguendo*, that open display of his Bible in court was a sincerely held tenet of his religion), that burden would still be justified because the Supreme Court has "never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the state is free to regulate." *Employment Div. Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 878-9 (1990).  In this case, the state was free to regulate conduct in the courtroom by restricting the display of religious books which have no bearing on the issues to be tried, without running afoul of the Free Exercise Clause.  Petitioner is not entitled to any habeas relief on First Amendment grounds.

## IV.  **SENTENCING**

After the jury found Petitioner guilty, the district court submitted "aggravating factor" special interrogatories to the same jury that had determined Petitioner's guilt.  The special interrogatories were thus presented in a separate proceeding occurring after the jury returned its guilty verdict, were submitted without additional evidence, and were based on jury instructions agreed on by counsel.  The court instructed the jury that the state had the burden of proving beyond a reasonable doubt the existence of aggravating factors.  The jury found unanimously that two aggravating factors existed beyond a reasonable doubt: first, that Petitioner induced his minor niece to engage in sexual penetration by giving her alcohol, tobacco, and gifts to gain her trust and favor; and second, that Petitioner induced her to engage in sexual penetration by giving her marijuana and methamphetamine to gain her trust and favor.  The district court sentenced appellant to 288 months in prison, a double durational departure from the 144-month presumptive sentence.

The district court impaneled the sentencing jury because it was required to do so as a result of the ruling of the Supreme Court of the United States in *Blakely v. Washington*, 552 U.S. 296 (2004), which established that judicial fact-finding on sentencing factors such as those required by the Minnesota Sentencing Guidelines was unconstitutional.  In this habeas proceeding, Petitioner contends that there was an illegal upward durational departure resulting from the jury findings of the aggravating factors.  He does not contend

that the Minnesota courts misapplied *Blakely*.  Rather, he contends that "[t]his

sentence was done prior to the Minnesota legislative action that allows juries to

find aggravating factors, and was done by the use of special interrogatories

tacked on to the verdict forms in an illegal attempt to satisfy existing federal law."

(Doc. No. 1 at p. 5.)

The Minnesota Court of Appeals concluded that the district court did not

exceed its authority in submitting the special interrogatories to the jury.  *See*

*State v. Albertson*, 2006 WL 466454, at *8.  Thereafter, the Minnesota Supreme

Court granted Petitioner's Petition for Review with respect to this issue; however,

the review was stayed pending the decision of *State v. Chauvin*, 723 N.W.2d 20

(Minn. 2006).  The Minnesota Supreme Court subsequently vacated its order

because it held in *Chauvin* that a trial court had the inherent judicial authority to

impanel a sentencing jury for purposes of departing from the presumptive

sentence under the guidelines.  In *Chauvin*, the Minnesota Supreme Court

disposed of the claim Petitioner makes here that the district court exceeded its

authority under Minnesota law when it submitted the special interrogatories to the

jury:

> use of sentencing jury was necessary because, as the district court
> correctly determined, the judicial fact finding portion of the
> Minnesota Sentencing Guidelines was unconstitutional under
> *Blakely*. . . .  Without a constitutional mechanism for imposing an
> upward sentencing departure and without legislative guidance on
> how to proceed, impaneling a sentencing jury was necessary (1) to
> carry out the legislative sentencing scheme to the extent that it
> contemplated that the district court would impose upward departures
> where such departures were "more appropriate, reasonable, or

equitable than the presumptive sentence, . . ." and (2) to vindicate Chauvin's Sixth Amendment right to a jury determination of aggravating sentencing factors.

*State v. Chauvin*, 720 N.W.2d at 24.

The process used by the district court of having a sentencing jury determine whether the aggravating factors were established beyond a reasonable doubt clearly passes the constitutional test established by the Supreme Court of the United States in *Blakely* and its prior holding *Apprendi*. The special interrogatories were presented to the jury in a separate proceeding occurring after the guilty verdict had been returned. They were submitted without additional evidence and were based on jury instructions agreed on by counsel. As noted above, the district court instructed the jury that the state had the burden of proving beyond a reasonable doubt that aggravating factors existed and that the jury had to find the aggravating factors unanimously. The district court also instructed the jury that if it unanimously found the existence of aggravating factors, the district court could increase that petitioner's sentence and, if not, the petitioner would receive the presumptive sentence. The Minnesota Court of Appeals did not unreasonably apply federal law, as determined by the Supreme Court of the United States, when it determined that the district court was guided by the constitutional mandates of *Blakely*. Petitioner's claim that there was a constitutional violation in connection with his sentencing fails.

## RECOMMENDATION

Based upon the foregoing and all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.  Plaintiff's Petition For Writ of Habeas Corpus (Doc. No. 1), be **DENIED**; and

2.  This action be **DISMISSED WITH PREJUDICE**.


Date:  July 30, 2008

*s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge


Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties within ten days (on or before August 12, 2008) a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.